# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AMOS JAMES SINGLETON, | : | Civil No. 3:17-cv-220 |
| Plaintiff | : | (Judge Mariani) |
| v. | : | |
| DR. ROBERT BEADLE, et al., | : | |
| Defendants | : | |

## MEMORANDUM

### I. Background

Plaintiff Amos James Singleton ("Singleton"), an inmate currently confined at the Benner Township State Correctional Institution, in Bellefonte, Pennsylvania ("SCI-Benner Township"), initiated the instant action pursuant to 42 U.S.C. § 1983. (Doc. 1). Named as Defendants are Dr. Robert Beadle, Jessica Habovich, Douglas Bopp, and Tammy Ferguson. (*Id.* at pp. 2, 5). Singleton alleges that Defendants violated his constitutional rights by failing to provide him with adequate dental care. (*Id.* at pp. 2, 5-7).

Presently pending before the Court is a motion for partial summary judgment pursuant to Federal Rule of Civil Procedure 56 filed on behalf of Defendants Bopp and Ferguson. (Doc. 27). For the reasons set forth below, the Court will grant Defendants' motion for partial summary judgment.

### II. Summary Judgment Standard of Review

Through summary adjudication, the court may dispose of those claims that do not

present a "genuine dispute as to any material fact." FED. R. CIV. P. 56(a). "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists. *Anderson*, 477 U.S. at 248. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(A)-(B). In evaluating whether summary judgment should be granted, "[t]he court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's,

then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied* 507 U.S. 912 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007). If a party has carried its burden under the summary judgment rule,

> its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).

### III. Statement of Undisputed Facts

On April 6, 2015, Singleton filed grievance number 561292 complaining about inadequate dental care he received on March 31, 2015 at SCI-Benner Township. (Doc. 28, Statement of Material Facts ("SMF"), ¶ 13; Doc. 28-1, p. 4, Declaration of Helen Shambaugh ("Shambaugh Decl."), ¶ 12; Doc. 28-1, p. 42, Official Inmate Grievance No. 561292; Doc. 31, ¶ 13). The grievance only named a Jane Doe dental hygienist, and the dentist. (*Id.*). On May 13, 2015, Defendant Bopp denied the grievance on initial review.

3

(Doc. 28-1, p. 43, Initial Review Response, Grievance No. 561292). Singleton appealed to the Facility Manager. (Doc. 28-1, p. 44). On appeal, Defendant Ferguson upheld the initial grievance response. (Doc. 28-1, pp. 45-46, Facility Manager's Appeal Response, Grievance No. 561292). Singleton then appealed to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA"). (Doc. 28-1, pp. 47-48). On appeal, the Chief Grievance Office denied Singleton's grievance appeal. (Doc. 28-1, pp. 49-50, SOIGA Response, Grievance No. 561292).

Singleton has not filed any other grievances regarding his dental care. (Shambaugh Decl. ¶ 14).

Singleton subsequently submitted two additional grievances pertaining to replacement or compensation for a personal television, and compensation after being removed from an education roster. (SMF ¶¶ 14-15; Shambaugh ¶ 14). Both of these grievances were appealed to the SOIGA. (SMF ¶ 14; Shambaugh ¶ 14).

## IV. Discussion

Defendants Bopp and Ferguson seek an entry of judgment in their favor based on Singleton's failure to exhaust the available administrative remedies with respect to any claims against them, and because Singleton's claim that they did not properly respond to his grievances fails as a matter of law. (Doc. 29, pp. 5-14).

Under the Prison Litigation Reform Act of 1996 (the "PLRA"), a prisoner is required

to pursue all avenues of relief available within the prison's grievance system before bringing a federal civil rights action concerning prison conditions. *See* 42 U.S.C. § 1997e(a); *Booth v. Churner*, 206 F.3d 289, 291 (3d Cir. 2000). This "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). It has been made clear that the exhaustion requirement is mandatory. *See Williams v. Beard*, 482 F.3d 637, 639 (3d Cir. 2007); *see also Booth v. Churner*, 532 U.S. 731, 741 (2001) (holding that the exhaustion requirement of the PLRA applies to grievance procedures "regardless of the relief offered through administrative procedures"); *Nyhuis v. Reno*, 204 F.3d 65, 67 (3d Cir. 2000) (same). "[I]t is beyond the power of [any] court . . . to excuse compliance with the exhaustion requirement." *Nyhuis*, 204 F.3d at 73 (quoting *Beeson v. Fishkill Corr. Facility*, 28 F. Supp.2d 884, 894-95 (S.D.N.Y. 1998)).

Further, the PLRA mandates that an inmate "properly" exhaust administrative remedies before filing suit in federal court, which demands compliance with an agency's deadlines and other procedural rules. *Woodford v. Ngo*, 548 U.S. 81, 92 (2006); *Spruill v. Gillis*, 372 F.3d 218, 230 (3d Cir. 2004) (concluding that the PLRA includes a procedural default component); *Rivera v. Pa. Dep't of Corr.*, 388 F. App'x 107, 108 (3d Cir. 2010) ("An inmate must exhaust his administrative remedies *prior* to filing a civil action in federal

5

court.") (emphasis added). Inmates who fail to fully, or timely, complete the prison grievance process, or who fail to identify the named defendants, are barred from subsequently litigating claims in federal court. See *Spruill*, 372 F.3d 218. "As for the failure to [] identify [the] named defendants on the grievance form, . . . to the extent the identity of a defendant was 'a fact relevant to the claim,' Pennsylvania's prison grievance policy mandated that the identification be included in the inmate's statement of facts on the grievance form. And, . . . in the absence of any justifiable excuse, a Pennsylvania inmate's failure to properly identify a defendant constituted a failure to properly exhaust his administrative remedies under the PLRA." *Williams v. Pennsylvania Dep't of Corr.*, 146 F. App'x 554, 557 (3d Cir. 2005) (citing *Spruill*, 372 F.3d at 234).

The Pennsylvania Department of Corrections ("DOC") Inmate Grievance System Policy consists of a three-step Inmate Grievance System to provide inmates with an avenue to seek review of problems that may arise during the course of confinement. Pursuant to DC-ADM 804, after an attempt to resolve any problems informally, an inmate may submit a written grievance to the facility's Grievance Coordinator for initial review. This must occur within fifteen days after the events upon which the claims are based. DC-ADM 804, § 1(A)(9). "The text of the grievance must be legible, understandable, and presented in a courteous manner. The inmate must include a statement of the facts relevant to the claim. The statement of facts shall include the date, approximate time and location of the event(s)

that gave rise to the grievance. The inmate shall identify individuals directly involved in the event(s)." DC-ADM 804, § 1(A)(12). Within fifteen days of an adverse decision by the Grievance Coordinator, an inmate may then appeal to the Facility Manager of the institution. DC-ADM 804, § 2(A)(1). Thereafter, within fifteen days of an adverse decision by the Facility Manager, an inmate may file a final appeal to the Secretary's Office of Inmate Grievances and Appeals. DC-ADM 804, § 2(B). An appeal to final review cannot be completed unless an inmate complies with all established procedures. An inmate must exhaust all three levels of review and comply with all procedural requirements of the grievance review process in order to fully exhaust an issue. *See Booth*, 206 F.3d at 293 n. 2 (outlining Pennsylvania's grievance review process); *Ingram v. SCI Camp Hill*, 448 F. App'x 275, 279 (3d Cir. 2011) (same).

Defendants argue that Singleton failed to exhaust any claims against Bopp and Ferguson because he failed to file a grievance against either Defendant regarding their alleged conduct. (Doc. 29, pp. 10-14). As noted above, the standard used in determining whether a prisoner has exhausted the administrative process is whether he complied with the applicable grievance procedures and rules. The relevant policy and the pertinent language states that "[t]he inmate shall identify individuals directly involved in the event(s)." (Doc. 28-1, p. 13, DC-ADM 804, § 1(A)(12)(b)). The *Spruill* Court found that a similar

7

provision in the earlier version of DC-ADM 804,[1] required an inmate to name the individuals in the grievance against whom the inmate eventually brings suit. As explained in *Spruill*, "[t]he purpose of the regulation here is to put the prison officials on notice of the persons claimed to be guilty of wrongdoing." *Spruill*, 372 F.3d at 234. The current version of DC-ADM 804 is even more compelling given the inclusion of the phrase "shall identify." (Doc. 31-1, p. 13, DC-ADM 804, § 1(A)(12)(b)). "[I]t is clear, regardless of the purpose of the requirement, that *Spruill* requires the prisoner-grievant-plaintiff to name in the grievance those he eventually sues, upon pain of procedural default." *Hemingway v. Ellers*, 2008 WL 3540526, at *11 (M.D. Pa. 2008) (citing *Williams*, 146 F. App'x at 557). Moreover, under *Spruill*, it is the plaintiff's burden to explain why he did not name a defendant in the grievance. *See Spruill*, 372 F.3d at 234 ("Spruill did not [name Brown in his grievance], and has offered no explanation for his failure to do so").

Singleton does not dispute that he failed to include any claims against Defendants Bopp and Ferguson in his initial grievance. (Doc. 31). Instead, he asserts that his claims against Bopp and Ferguson are "related to" the claims in the initial grievance. (*Id.* at p. 2). The *Spruill* Court held that the prison can excuse an inmate's procedural default by "identifying the unidentified person and acknowledging that they were fairly within the

---

[1] The earlier version stated that "[t]he inmate shall include a statement of facts relevant to the claim. . . . The inmate should identify any persons who may have information that could be helpful in resolving the grievance." DC-ADM 804 § VI(A)(1)(g) (effective date May 1, 2002).

8

compass of the prisoner's grievance." *Spruill*, 372 F.3d at 234. However, such is not the situation in the present case where the claims against Bopp and Ferguson solely relate to their responses to his grievance, and they are not alleged to have any involvement in Singleton's dental care, the subject of the initial grievance. Singleton's initial grievance pertains to the dental care he received on March 31, 2015, and states, in its entirety, as follows:

> On March 31, 2015, I was scheduled to have fil[l]ings of two (2) teeth in preparation for dentures. The Dental Hygienist (Jane Doe) inform[ed] me that the new policy is; "I must pay in advance for dentures, if the Dept. of Corrections have previously provided a free pair." I inform[ed] "Jane Doe" that I am under chronic care (Diabetes) and my teeth are the first to suffer extraction. Plus, the free pair provided was 15 or 20 years ago and I have lost several teeth since then. I am currently on a mechanical soft diet due to my difficult in chewing. Jane Doe response was negative. After fil[l]ing two cavit[ies], the dentist next proceeded to extract my bottom tooth without "anesthetic." I was not scheduled for this procedure. Thereafter, both the dentist and dental hygienist laugh in my face, in violation of the Dept. of Corrections code of ethics. I want to be fitted immediate[ly] with new dentures or in the alternative compensatory damages in excess of one thousand dollars per day and punitive damages not to exceed three times that of compensatory damages.

(Doc. 28-1, p. 42, Official Inmate Grievance) (sic). It is not at all clear from the initial grievance that Defendants Bopp and Ferguson, who were solely involved in the review process, were "fairly within the compass" of the grievance itself. *Spruill*, 372 F.3d at 234. Additionally, only issues raised in the original grievance may be appealed to the Facility Manager. (Doc. 28-1, p. 22, DC-ADM 804, § 2(A)(1)(c)). And, only issues that are raised in

9

an official grievance, does not establish that the officials and administrators were involved in the underlying allegedly unconstitutional conduct. *See Rode*, 845 F.2d at 1207-08 (concluding that after-the-fact review of a grievance is insufficient to demonstrate the actual knowledge necessary to establish personal involvement); *Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006); *see also Croom v. Wagner*, 2006 WL 2619794, at *4 (E.D. Pa. Sept. 11, 2006) (holding that neither the filing of a grievance nor an appeal of a grievance is sufficient to impose knowledge of any wrongdoing); *Ramos v. Pennsylvania Dept. of Corrections*, 2006 WL 2129148, at *2 (M.D. Pa. July 27, 2006) (holding that the review and denial of the grievances and subsequent administrative appeal does not establish personal involvement). Singleton does not assert that Defendants Bopp and Ferguson had any involvement in his dental care. Consequently, assuming *arguendo* that Singleton exhausted his claims against Defendants Bopp and Ferguson, they would nevertheless be entitled to an entry of judgment in their favor based on their lack of personal involvement in the alleged constitutional violations.

A party opposing summary judgment must come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. *Pappas v. City of Lebanon*, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); FED. R. CIV. P. 56(e). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims. *See Anderson*, 477 U.S. at 250-57; *Matsushita Elec. Indus. Co. v.*

both the original grievance and the appeal to the Facility Manager may be appealed to the Secretary's Office of Inmate Grievances and Appeals. (Doc. 28-1, p. 25, DC-ADM 804, § 2(B)(1)(b)). Singleton's assertions against Bopp and Ferguson were not included in the initial grievance and cannot be exhausted for purposes of the PLRA.

Singleton has failed to present any facts or evidence that prison officials obstructed his attempt to exhaust administrative remedies, such that he would have been prevented from filing a new, separate grievance regarding any claims against Defendants Bopp and Ferguson. Courts have invariably held that affirmative misconduct by prison officials, designed to impede or prevent an inmate's attempts to exhaust, may render administrative remedies unavailable. *See Todd v. Benning*, 173 F. App'x 980, 982-83 (3d Cir. 2006) (expressing approval of the Eighth Circuit's holding in *Miller v. Norris*, 247 F.3d 736 (8th Cir. 2001) that administrative remedies were not available where prison officials "purportedly prevented prisoner from employing the prison's grievance system"). Examples of affirmative misconduct on the part of prison officials include: (1) threatening a prisoner in an attempt to thwart the prisoner's attempts to exhaust, *see Harcum v. Shaffer*, 2007 WL 4167161, at *5 (E.D. Pa. 2007) (finding administrative remedies unavailable where prison officials threatened plaintiff with "opposition to his future prerelease application, parole, or outside work detail if he did not withdraw his grievance"), (2) refusing to provide appropriate grievance forms in response to inmate inquiries, *see Mitchell v. Horn*, 318 F3d 523, 529 (3d

Cir. 2003), (3) advising an inmate that his or her situation does not require a grievance, see *Brown v. Croak*, 312 F.3d 109, 111 (3d Cir. 2002) (finding that administrative remedies were unavailable to plaintiff who had been advised by prison official that he must wait until the end of the prison's investigation before filing a grievance), and (4) failing to file or respond to a prisoner's grievances, see *Camp*, 219 F.3d at 280-81 (finding that administrative remedies were unavailable where prison officials refused to file plaintiff's grievances regarding their coworkers). The Third Circuit has found that the institution "rendered its administrative remedies unavailable to [an inmate] when it failed to timely (by its own procedural rules) respond to his grievance and then repeatedly ignored his follow-up requests for a decision on his claim." *Robinson v. Superintendent Rockview SCI*, 831 F.3d 148, 154 (3d Cir. 2016). In the present matter, Singleton does not allege, nor does he present any affirmative evidence, that he was he misled or ignored by prison officials, was impeded in filing a grievance, or that some other extraordinary circumstance prevented him from complying with the administrative review process with regard to any claims against Defendants Bopp and Ferguson.

Furthermore, Singleton acknowledges that his claims against Defendants Bopp and Ferguson are based solely on their involvement in the grievance procedure and their responses to his grievance. (Doc. 31). A state prisoner's allegation that prison officials and administrators responded inappropriately, or failed to respond to a prisoner's complaint or

*Zenith Radio Corp.*, 475 U.S. 574, 587-89 (1986); *see also* FED. R. CIV. P. 56(c), (e). Singleton has failed to meet his burden with respect to the administrative exhaustion of his claims against Defendants Bopp and Ferguson.

## V. <u>Conclusion</u>

Based on the foregoing, Defendants' motion (Doc. 27) for partial summary judgment will be granted.

A separate Order shall issue.

Dated: February 26, 2018

Robert D. Mariani
United States District Judge