# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AMOS JAMES SINGLETON, | : | Civil No. 3:17-cv-220 |
| | : | |
| Plaintiff | : | (Judge Mariani) |
| | : | |
| v. | : | |
| | : | |
| DR. ROBERT BEADLE, *et al.*, | : | |
| | : | |
| Defendants | : | |

## MEMORANDUM

## I.    Background

Plaintiff Amos James Singleton ("Singleton"), an inmate who, at all relevant times,

was housed at the Benner Township State Correctional Institution, in Bellefonte,

Pennsylvania ("SCI-Benner Township"), initiated the instant action pursuant to 42 U.S.C. §

1983. (Doc. 1).  The remaining Defendants are Dr. Robert Beadle and dental assistant

Jessica Habovich.[1]  Singleton alleges that Defendants violated his constitutional rights by

failing to provide him with adequate dental care.  (*Id.* at pp. 2, 5-7).

Presently pending before the Court is a motion for summary judgment pursuant to

Federal Rule of Civil Procedure 56 filed on behalf of Defendants Beadle and Habovich.

(Doc. 56).  For the reasons set forth below, the Court will grant the motion for summary

judgment.

---

[1]    On February 26, 2018, the Court granted judgment in favor of Defendants Douglas Bopp and
Tammy Ferguson.  (Docs. 36, 37).

## II.    Summary Judgment Standard of Review

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact." FED. R. CIV. P. 56(a). "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists. *Anderson*, 477 U.S. at 248. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1)(A)-(B). In evaluating whether summary judgment should be granted, "[t]he court need consider only the cited materials, but it may consider other materials in the record."

FED. R. CIV. P. 56(c)(3). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied* 507 U.S. 912 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007). If a party has carried its burden under the summary judgment rule,

> its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).

## III.   Statement of Undisputed Facts[2]

Singleton has never had dental care outside of a correctional setting. (Doc. 58, Statement of Material Facts ("SMF"), ¶ 1). Singleton suffers from periodontal disease and does not have all of his natural teeth. (*Id.* at ¶¶ 2-3). In the past, Singleton had teeth pulled, he was always under anesthesia, and did not experience any pain. (*Id.* at ¶ 4).

At some point between 1995 and 1997, during Singleton's incarceration with the Department of Corrections ("DOC"), he was provided dentures with approximately five to six teeth. (*Id.* at ¶ 5). Since he received those dentures, Singleton lost five to six teeth needed to support the dentures. (*Id.* at ¶ 6). Singleton was told by DOC staff that he would receive new dentures. (*Id.* at ¶ 7).

On March 31, 2015, Singleton was scheduled to meet dental staff in preparation for dentures and to have two teeth filled for cavities. (*Id.* at ¶ 8). Singleton understood that dental staff were not planning to pull any teeth that day. (*Id.* at ¶ 9). During the visit, Dr.

---

[2]    Singleton filed an affidavit (Doc. 60) setting forth factual and legal statements, however this filing fails to comply with Local Rule 56.1, which requires a party opposing a motion for summary judgment to "include a separate, short and concise [responsive] statement of the material facts, responding to the numbered paragraphs set forth in" the movant's fact statement. *See* Local Rule 56.1. Singleton's affidavit (Doc. 60) contains ten paragraphs, and fails to correspond to the twenty-nine paragraph concise statement of material facts filed by Defendants (Doc. 58). The averments of Singleton's affidavit are entirely independent of those in Defendants' filing, and the numbered paragraphs of Singleton's submission do not correlate in any meaningful way to the paragraphs in Defendants' statement. In sum, Singleton's document does not comply with Local Rule 56.1's requirement of parity between the two filings. Therefore, as authorized by Local Rule 56. 1, the Court will admit as uncontroverted the statement of facts submitted by Defendants. *See* Local Rule 56.1 ("All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.").

4

Beadle and dental assistant Habovich told Singleton that he would not receive new dentures because the DOC previously gave him partial dentures approximately ten or twenty years ago. (*Id.* at ¶ 10). After Dr. Beadle repaired the cavities, Singleton stated that he just "went in there" and pulled out a tooth. (*Id.* at ¶ 11). Singleton felt "a sharp, tugging pain of the tooth being extracted" and jumped out of the chair. (*Id.* at ¶ 12). The tooth pulled was a healthy tooth. (*Id.* at ¶ 13). Singleton did not see what tool Dr. Beadle used to pull the tooth. (*Id.* at ¶ 14). Dr. Beadle and Habovich laughed, and Singleton believes Habovich stated, "Oops. My bad." (*Id.* at ¶ 15).

Pulling the tooth was an accident. (*Id.* at ¶ 16). At his deposition, Singleton testified, "When they realized that I was in pain from pulling the tooth and that I wasn't scheduled to have a tooth pulled, it was more like damn, we -- we made a mistake. Ha, ha, ha." (*Id.* at ¶ 17). Singleton asked, "what . . . the hell did you-all just do?" (*Id.* at ¶ 18). Habovich responded, "pulled the tooth." (*Id.* at ¶ 19). Dr. Beadle responded that the tooth was loose anyway. (*Id.* at ¶ 20). Singleton then left to file a grievance. (*Id.* at ¶ 21).

As a dental assistant, Habovich handed Dr. Beadle the tools, put the suction tool in Singleton's mouth, and did what Dr. Beadle asked her to do. (*Id.* at ¶ 22).

Singleton has no doubt that Dr. Beadle was the only one involved in pulling the tooth. (*Id.* at ¶ 23). Although pulling the tooth was an accident, Singleton believes it was still deliberate because Dr. Beadle should have known better. (*Id.* at ¶ 24). Singleton was not

given anesthesia, he was not scheduled to have the tooth pulled, and he had not complained about the tooth. (*Id.*). Singleton did not request further dental treatment. (*Id.* at ¶ 26).

In 2015, Singleton was placed on a mechanical soft diet because he has no molars. (*Id.* at ¶ 25). He remains on a mechanical soft diet today. (*Id.*).

For the past three to three and a half years, Singleton has suffered from abscesses, bleeding and pain, and gargles with warm salt water. (*Id.* at ¶ 27).

Singleton subsequently underwent throat surgery. (*Id.* at ¶ 28). During the surgery, the surgeon knocked out one tooth and damaged another one. (*Id.*). Dental staff at the institution extracted the damaged tooth. (*Id.*). At that time, Singleton also started the process to obtain new dentures, had imprints and impressions made, and was going to receive new dentures by December 2018. (*Id.* at ¶ 29).

## IV. Discussion

Defendants seek an entry of judgment in their favor on the following grounds: (1) the Fifth Amendment is not applicable to state actors; (2) the Fourteenth Amendment claim is duplicative of the Eighth Amendment claim; (3) Singleton failed to establish an equal protection claim; (4) Defendant Habovich was not personally involved in the alleged wrongs; (5) Singleton failed to establish a conspiracy claim; (6) Defendants were not deliberately indifferent to Singleton's serious medical needs; and, (7) Defendants are protected by

6

qualified immunity. (Doc. 59). The Court will address these arguments *seriatim*.

## A. Fifth Amendment Claim

The Fifth Amendment provides, *inter alia*, that no person "shall be deprived of life, liberty, or property without due process of law." U.S. CONST. amend. V. However, "the due process clause under the Fifth Amendment only protects against federal governmental action and does not limit the actions of state officials." *Caldwell v. Beard*, 324 F. App'x 186, 189 (3d Cir. 2009); *see also Nguyen v. United States Catholic Conference*, 719 F.2d 52, 54 (3d Cir. 1983) ("The limitations of the fifth amendment restrict only federal governmental action . . . ."). Singleton sets forth claims against employees of the Pennsylvania Department of Corrections pursuant to 42 U.S.C. § 1983. Singleton does not set forth any allegations against the federal government or federal officials. Because the due process clause of the Fifth Amendment only applies to federal officials, Singleton cannot maintain a Fifth Amendment claim against Defendants and the motion for summary judgment will be granted on this ground.[3]

## B. Fourteenth Amendment Claims

### 1. *Substantive Due Process Claim*

Defendants argue that, to the extent Singleton raises a Fourteenth Amendment substantive due process claim, they are entitled to judgment in their favor because the

---

[3]    Although Singleton states that he did not raise a Fifth Amendment Claim (*see* Doc. 63, p. 2), the complaint plainly states that he is pursing claims pursuant to the Fifth Amendment (*see* Doc. 1, p. 6).

Fourteenth Amendment claim is based on the same conduct as the Eighth Amendment claim. (Doc. 59, pp. 3-4).

In adopting the "more-specific-provision-rule" established in *County of Sacramento v. Lewis*, 523 U.S. 833, 843-44 (1998), the Third Circuit noted that "[u]nder this rule, 'if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process.' *United States v. Lanier*, 520 U.S. 259, 272 n. 7, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997) (clarifying prior holing in *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989))." *Betts v. New Castle Dev. Ctr.*, 621 F.3d 249, 260-61 (3d Cir. 2010). Because Singleton's claims related to his dental care fit squarely within the Eighth Amendment claim, the more-specific-provision rule forecloses any substantive due process claim. The Court will grant Defendants' motion on this ground.

### 2. *Equal Protection Claim*

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. CONST. amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). To state an equal protection claim, a

8

plaintiff must allege that: (1) he or she was a member of a protected class, (2) he or she was treated differently from similarly situated persons outside of his or her protected class, and (3) the resultant discrimination was purposeful or intentional rather than incidental. *Tillman v. Lebanon Cty. Corr. Facility*, 221 F.3d 410, 423-24 (3d Cir. 2000).

An equal protection claim can also be brought by a "class of one," a plaintiff alleging that he has been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Williams v. Morton*, 343 F.3d 212, 221 (3d Cir. 2003); *see also Jean-Pierre v. Bureau of Prisons*, 497 F. App'x 164, 168 (3d Cir. 2012). If a distinction between persons does not implicate a suspect or quasi-suspect class, state action will be upheld if it is rationally related to a legitimate state interest. *See Tillman*, 221 F.3d at 423.

In his brief in opposition to Defendants' motion for summary judgment, Singleton asserts that Defendants violated his right to equal protection because other inmates received proper dental care.[4] (Doc. 63, p. 3). Singleton does not state that he is a member of a protected class. Indeed, prisoners are not a protected class of individuals. *See Abdul-Akbar v. McKelvie*, 239 F.3d 307, 317 (3d Cir. 2001) (stating that prisoners are not a

---

[4] The Court notes that Singleton raises an equal protection claim for the first time in his brief in opposition to Defendants' motion for summary judgment. (Doc. 63). The complaint does allege that Defendants treated Singleton differently from any other inmates. (*See* Doc. 1). Because the complaint raise a claim pursuant to the Fourteenth Amendment, the Court will address any potential equal protection claim.

suspect class). Therefore, Singleton's claim survives only if he has properly stated a violation of his equal protection rights under a class-of-one theory. To survive under the class-of-one theory, Singleton must establish that he has been treated differently from similarly situated inmates, that the Defendants did so intentionally, and that this difference in treatment bears no rational relation to any legitimate penological interest. *Phillips*, 515 F.3d at 243. When alleging the existence of similarly situated individuals, plaintiffs "cannot use allegations . . . that amount to nothing more than 'conclusory, boilerplate language' to show that he may be entitled to relief," and "bald assertion[s] that other[s] . . . were treated in a dissimilar manner" will not survive dismissal. *Young v. New Sewickley Twp.*, 160 F. App'x 263, 266 (3d Cir. 2005) (citing *Evancho v. Fisher*, 423 F.3d 347, 354-55 (3d Cir. 2005); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561 (2007) (requiring more than a "wholly conclusory statement of claim" to survive a motion to dismiss). Instead, plaintiffs must identify similarly situated individuals and allege "occasions or circumstances" of differential treatment. *Young*, 160 F. App'x at 266; *see also Twombly*, 550 U.S. at 563 (requiring a plaintiff to plead a set of facts consistent with legal allegations in complaint to survive dismissal).

Singleton generally states that Defendants violated his equal protection rights by providing proper dental care to other inmates. Singleton identifies no other inmates who were similarly situated to him that were treated differently by Defendants and he has not

presented any evidence to support this claim. The statements in Singleton's opposition brief are simply "bald assertions" that do not allege "occasions and circumstances" of differential treatment. *Young*, 160 F. App'x at 266. Because Singleton has not stated the existence of similarly situated individuals sufficient to support a class-of-one claim, the equal protection claim fails.

## C. Lack of Personal Involvement of Defendant Habovich

Defendant Habovich argues that she is entitled to judgment in her favor because she lacks personal involvement in the alleged wrongs. (Doc. 59, pp. 4-6). The Court agrees.

Individual liability can be imposed in a civil rights action only if the state actor played an "affirmative part" in the alleged misconduct and "cannot be predicated solely on the operation of respondeat superior." *Evancho*, 423 F.3d at 353 (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998)). "A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode*, 845 F.2d at 1207-08; *see also Rizzo v. Goode*, 423 U.S. 362 (1976); *Atkinson v. Taylor*, 316 F.3d 257 (3d Cir. 2003). Such allegations, however, must be made with appropriate particularity in that a complaint must allege the particulars of conduct, time, place, and person responsible. *Evancho*, 423 F.3d at 354; *Rode*, 845 F.2d at 1207-08. Alleging a mere hypothesis that an individual defendant had personal knowledge or involvement in

11

depriving the plaintiff of his rights is insufficient to establish personal involvement. *Rode*,
845 F.2d at 1208.

In her role as a dental assistant, defendant Habovich listened to Dr. Beadle's
directions and handed tools to him. (Doc. 57-1, Singleton Deposition at 21:17-21).
Singleton testified as follows:

[Attorney:]   Can you tell me what Jessica's -- Jessica Habovich's
              involvement was throughout the whole --

[Singleton:]  Well, she was a dental assistant, so she gave him the tools.
              She put the suction apparatus in my mouth and whatever -- the
              dentist -- whatever the dentist asks her to do, she does.

[Attorney:]   Did she touch you at any time during your visit?

[Singleton:]  I don't recall.

[Attorney:]   Okay. Who was the one who actually pulled the tooth?

[Singleton:]  The dentist.

[Attorney:]   Did she assist in having the tooth pulled in any way?

[Singleton:]  Not to my knowledge. I don't know.

[Attorney:]   Did she tell the doctor to pull the tooth?

[Singleton:]  No. I didn't hear her say anything. I didn't hear the dentist say
              anything.

[Attorney:]   Would it be fair to say that Dr. Beadle was the only one
              involved in actually physically pulling your tooth?

[Singleton:]  Oh, no doubt.

(Doc. 57-1, Singleton Deposition, at 21:14-22:13).

It is undisputed that defendant Habovich did not personally pull Singleton's tooth and Singleton has "no doubt" that Dr. Beadle was the only one involved in pulling his tooth. (Doc. 57-1, Singleton Deposition, at 22:10-13). Defendant Habovich provided assistance to the dentist while he treated Singleton. However, there is no evidence of record that she pulled Singleton's tooth, delayed or denied dental treatment to Singleton, or was responsible for denying his request for new dentures. In any event, the record reflects that Singleton was scheduled to receive new dentures by December 2018. (Doc. 57-1, Singleton Deposition, at 16:13-14). As concerns a potential verbal harassment claim lodged against defendant Habovich, it is well-settled that general verbal harassment and antagonizing are not actionable under 42 U.S.C. § 1983. *See Marten v. Hunt*, 479 F. App'x 436 (3d Cir. 2012); *Lewis v. Wetzel*, 153 F.Supp.3d 678 (M.D. Pa. 2015).

Accordingly, the Court will grant Defendants' motion for summary judgment as to the claims against Habovich.

## D. Conspiracy Claim

In order to demonstrate a conspiracy, "a plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right 'under color of law.'" *Parkway Garage, Inc. v. City of Philadelphia*, 5 F.3d 685, 700 (3d Cir. 1993) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970)), *abrogated on other*

13

grounds by *United Artists Theatre Circuit, Inc. v. Twp. of Warrington, Pa.*, 316 F.3d 392,

400 (3d Cir. 2003). "Bare conclusory allegations of 'conspiracy' or 'concerted action' will not

suffice to allege a conspiracy. The plaintiff must expressly allege an agreement or make

averments of communication, consultation, cooperation, or command from which such an

agreement can be inferred." *Flanagan v. Shively*, 783 F.Supp. 922, 928 (M.D. Pa. 1992).

The plaintiff's allegations of a conspiracy "must be supported by facts bearing out the

existence of the conspiracy and indicating its broad objectives and the role each Defendant

allegedly played in carrying out those objectives." *Id.* A plaintiff cannot rely on subjective

suspicions and unsupported speculation. *Young v. Kann*, 926 F.2d 1396, 1405 n. 16 (3d

Cir. 1991).

Singleton concluded that Defendants conspired to violate his rights and coverup the

purported wrongdoing, yet he has failed to produce any evidence showing an agreement or

plan formulated and executed by the Defendants to achieve this conspiracy. Singleton

cannot rely on unsupported claims of conspiracy. It is undisputed that pulling the tooth was

unplanned and was an accident. (Doc. 57-1, Singleton Deposition, at 19:13-16; 24:14-15).

Singleton testified as follows:

[Singleton:] When they realized that I was in pain from pulling the tooth and
that I wasn't scheduled to have a tooth pulled, it was more like
damn, we -- we made a mistake. Ha, ha, ha."

[Attorney:] So pulling the tooth was an accident?

14

[Singleton:]    Yes.

(Doc. 57-1, Singleton Deposition, at 24:10-15).

It is clear that pulling Singleton's tooth was an accident, and there was no plan or agreement between Defendants to pull the tooth. Without a factual showing which gives some substance to this conspiracy claim, Singleton's conspiracy claim amounts to nothing more than mere conjecture and bare speculation. The law is clear that bare allegations of wrongdoing by a Defendant, without any substantiating proof of an unlawful agreement, are insufficient to sustain a conspiracy claim. See Young v. Kann, 926 F.2d1396, 1405 n.16 (3d Cir. 1991). Therefore, the Court will enter judgment in favor of Defendants on the conspiracy claim.

## E.    Deliberate Indifference to Medical Needs

In the medical context, a constitutional violation under the Eighth Amendment occurs only when prison officials are deliberately indifferent to serious medical needs. Estelle v. Gamble, 429 U.S. 97 (1976). The standard is two-pronged: "[i]t requires deliberate indifference on the part of prison officials and it requires that the prisoner's medical needs be serious." West v. Keve, 571 F.2d 158, 161 (3d Cir. 1978). A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).

15

Deliberate indifference to a serious medical need involves the "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 104. Such indifference is manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, *Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury," *White v. Napoleon*, 897 F.2d 103, 109 (3d Cir. 1990). "[W]here a plaintiff has received some care, inadequacy or impropriety of the care that was given will not support an Eighth Amendment claim." *Roach v. Kligman*, 412 F. Supp. 521, 525 (E.D. Pa. 1976). *See also U.S. ex rel. Walker v. Fayette County*, 599 F.2d 573 (3d Cir. 1979). Negligent treatment provided for a condition is not actionable as an Eighth Amendment claim because medical malpractice is not a constitutional violation. *Estelle*, 429 U.S. at 106.

First, Singleton has not produced any evidence that he was diagnosed by a dentist as needing dentures. Singleton contends that the denial of dentures has created discomfort and difficulty eating foods, and he has been placed on a mechanical soft diet. Most significantly, Singleton testified that he was scheduled to receive new dentures by December 2018. (Doc. 57-1, Singleton Deposition, at 16:13-14). Singleton's claims regarding the denial of dentures, without more, fail to meet the definition of a serious medical need for which he was deprived treatment. *See Bronson v. White*, 2007 WL

16

3033865, at *6 (M.D. Pa. Oct. 15, 2007) (granting defendant's motion for summary judgment and dismissing inmate's Eighth Amendment claim based on defendant's refusal to provide inmate dentures following the extraction of several teeth).

Second, Singleton has not established that Defendant Dr. Beadle was deliberately indifferent to a serious medical need by pulling his tooth. In *Gillespie v. Hogan*, 182 F. App'x 103 (3d Cir. 2006), the defendant dentist negligently removed the tooth of a prisoner, leaving part of the tooth in his gums for more than a year. *Id.* at 104. As a result, the prisoner suffered significant pain and hardship while the tooth fragment remained in his mouth. *Id.* at 105. The Third Circuit held that the negligent oral surgery did not rise to the level of "deliberate indifference" required for a 42 U.S.C. § 1983 claim. *Id.*

Similarly, Singleton's claims do not rise to the level of deliberate indifference. The record reflects that pulling the tooth was an accident and unplanned, and there is no indication that Dr. Beadle's actions were based on an ulterior motive beyond providing routine patient care. *See Spruill*, 372 F.3d at 237 (noting that in order to state a deliberate indifference claim, a plaintiff should in some way "connect[ ] his factual allegations to the alleged mental states" of the defendants). Singleton has failed to establish that Defendant Beadle had a culpable state of mind and that pulling his tooth was intentionally wrong. Singleton's claims amount to no more than negligent treatment, or possibly gross negligence. It is well-settled that "mere allegations of malpractice do not raise issues of

17

constitutional import," and Singleton's claims must fail. *Lanzaro*, 834 F.2d at 346.

Furthermore, Singleton does not allege a denial of dental treatment or any undue delay in providing treatment. To the contrary, the evidence shows that his dental complaints were addressed and treated by Defendants. A reasonable factfinder could not conclude that Defendant Dr. Beadle violated Singleton's Eighth Amendment rights by acting with deliberate indifference to a serious medical need or by failing to address a serious medical need, especially in light of Singleton's own refusal of further dental treatment. *See Isenberg v. Prasse*, 433 F.2d 449 (3d Cir. 1970) (rejecting a claim that malpractice by a dentist while extracting teeth constitutes unconstitutional cruel and unusual punishment); *Green v. Dep't of Corr.*, 2012 WL 2354443, *3 (3d Cir. 2012) (finding that the prisoner's claim that the prison dentist accidentally broke his front tooth alleged mere negligence and did not rise to level of deliberate indifference to prisoner's needs); *Gindraw v. Dendler*, 967 F. Supp. 833, 836-38 (E.D. Pa. 1997) (finding that the prisoner's allegation that the defendant dentist extracted the wrong tooth failed to establish a claim of deliberate indifference); *Prince v. Bradshaw*, 2016 WL 1436577, at *2 (E.D. Mo. 2016) (dismissing a deliberate indifference claim, explaining a "mistaken extraction of teeth does not in and of itself establish deliberate indifference, and plaintiff alleges no state of mind that is more blameworthy than negligence, or perhaps gross negligence"). There is no evidence that Dr. Beadle's actions were deliberate or intentional and there is no evidence of record that he possessed the requisite

18

mental intent to sustain a deliberate indifference claim. Therefore, the Court will grant Defendants' motion with respect to the Eighth Amendment claim.

Under the deliberate indifference standard Plaintiff's claims cannot survive Defendant Beadle's motion for summary judgment. However, this Court is compelled to express its strong disapproval of what it believes the record evidence shows: that a significant breach of the standard of care owed to Plaintiff manifested by Dr. Beadle's extraction of a tooth, allegedly without anesthesia, in the circumstances where no extraction was determined to be necessary or appropriate. Despite this, Dr. Beadle proceeded to extract a tooth from Plaintiff's mouth without medical or dental necessity. Though the stringent standard of deliberate indifference prevents this § 1983 action from moving forward, Dr. Beadle's conduct raises serious issues of medical malpractice that may be subject to vindication under state law.

### F.    Qualified Immunity

Defendants invoke the defense of qualified immunity in their summary judgment motion. (Doc. 59, pp. 11-15). "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). "Qualified immunity balances two important interests—the need to hold public officials

accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 555 U.S. at 231. It "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). "Thus, so long as an official reasonably believes that his conduct complies with the law, qualified immunity will shield that official from liability." *Sharp v. Johnson*, 669 F.3d 144, 159 (3d Cir. 2012) (citing *Pearson*, 555 U.S. at 244). Although qualified immunity is generally a question of law that should be considered at the earliest possible stage of proceedings, a genuine dispute of material fact may preclude summary judgment on qualified immunity. *Giles v. Kearney*, 571 F.3d 318, 325-26 (3d Cir. 2009).

A qualified immunity determination involves a two-pronged inquiry: (1) whether a constitutional or federal right has been violated; and (2) whether that right was "clearly established." *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part by Pearson*, 555 U.S. at 236 (permitting federal courts to exercise discretion in deciding which of the two *Saucier* prongs should be addressed first). Because there are no genuine issues of fact as to whether a constitutional or federal right has been violated, Defendants' motion will be granted on this ground.

## V.    Conclusion

Based on the foregoing, Defendants' motion (Doc. 56) for summary judgment will be

granted.

     A separate Order shall issue.

Dated: July 2~, 2019

Robert D. Mariani
United States District Judge